IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| IN RE: | |
|---|---|
| PULSAR PUERTO RICO, INC. A/K/A DIAMOND PALACE HOTEL & CASINO, | Bankruptcy No. 08-07557 (BKT) |
| Debtor. | Chapter 11 |

**EUROBANK OBJECTIONS TO SALE OF ASSETS**

TO THE HONORABLE COURT:

By undersigned counsel, Eurobank very respectfully states and prays:

I.  Procedural Posture.

On February 17, 2010, Debtor ("Pulsar") filed a "Revised Notice of Auction of Diamond Palace Hotel and Casino." Dkt. 446. The Notice of Auction identifies **only two mortgages**, one at par. 3.a. and the other one at par. 3.b. The latter mortgage is said to have been executed "before the undesigned notary," whose identity remains a riddle, albeit not one wrapped in a mystery inside an enigma. However, as to other mortgages which secure bearer mortgage notes, one is left to rummage **through a sixty-seven (67) pages long** "Exhibit 1" to the Notice, which has been "filed with the Court. **Due to the number of pages, it has not otherwise been circulated.** Copies may be obtained from the Court's docket, Debtor's counsel, or Westernbank's counsel." (Emphasized). Exhibit 1 was **never** published in the newspapers. Neither was it mailed with the Notice of Auction. See dkt. 447, which does **not** mention Exhibit 1 to the Notice of Auction as one of the documents being served by mail.

Therefore, the Notice of Auction was **not specifically addressed to the following mortgages**:

A.  Property no. 889.

1.  Mortgage securing $1,300,000 bearer mortgage note, recorded at page 138 of volume 608, *Santurce Norte*.

2. Mortgage securing $500,000 bearer mortgage note, recorded at page 139 (over) of volume 608, *Santurce Norte*.

3. Mortgage securing $300,000 bearer mortgage note, recorded at mobile volume 1026, *Santurce Norte*.

4. Mortgage securing $5,750,000 bearer mortgage note, presented for recordation on April 18, 2008.

B. Property no. 19182 (one of 52 properties).

1. Mortgage securing $100,000 bearer mortgage note, recorded at page 250 of volume 531, *Santurce Norte*.

2. Mortgage securing $1,300,000 bearer mortgage note, recorded at page 250 (over) of volume 531, *Santurce Norte*.

3. Mortgage securing $1,950,000 bearer mortgage note, recorded at page 250 (over) of volume 531, *Santurce Norte*.

4. Mortgage securing $250,000 bearer mortgage note, recorded at page 250 of volume 531, *Santurce Norte*.

5. Mortgage securing $250,000 bearer mortgage note, presented for recordation on February 8, 2008.

6. Mortgage securing $5,750,000 bearer mortgage note, presented for recordation on April 18, 2008.

C. Remaining 51 properties in the 19155-19207 group.

1. Same mortgages as in part "B" above, but recorded at **different** pages **and** volumes of the Registry of Property for *Santurce Norte*.

II. Legal Framework.

According to the First Circuit, "Notice is the cornerstone underpinning Bankruptcy Code Procedure.... The Code 'notice' requirements have even greater force in a case like the present, where the

order approving the proposed sale authorized a transfer of *substantially all* chapter 11 estate assets-for present purposes, the functional equivalent of an order confirming a conventional chapter 11 reorganization plan. As such, the order confirming a chapter 11 liquidation sale warrants especial bankruptcy court scrutiny... Participants in chapter 11 all-asset sales — parties and bidders alike – can avoid this jurisdictional 'no man's land' by ensuring compliance with Code notice requirements to 'parties in interest,'... **and, in problematic circumstances, by securing timely bankruptcy court determination as to the notice** and opportunity for hearing appropriate in the particular circumstances..." Western Auto Supply Company v. Savage Arms, Inc. (In re Savage Industries, Inc.), 43 F.3d 714, 720, 722-23 (1st Cir. 1994) (emphasis partly in the original). Notwithstanding this admonition from the First Circuit and Bankruptcy Rule 9008's requirement that **the Court** "**determine the form** and the manner [of service or notice by publication, including the newspaper or other medium to be used and the number of publications]," **for the second time now** Pulsar has failed to request, much less obtain, this Court's *imprimatur* for the Notice of Auction.

III.     The Notice of Auction Fails to Comply with L.B.R. 6004-1(a)(2).

Pursuant to L.B.R. 6004-1(a)(2), the Notice of Auction had to include "**a statement of** the aggregate amount of liens or encumbrances known to movant [Pulsar], **and a statement** that the proposed sale price is at least equal to or more than the value of the property." (Emphasized). Given "Exh. 1" to the Notice of Auction, Pulsar can hardly claim ignorance of "the aggregate amount of liens or encumbrances" on **its own** single asset real estate, a matter of public record (the Registry of Property). As to L.B.R. 6004-1(a)(2)'s requirement that Pulsar include in the Notice of Auction "a statement that the proposed sale price is at least equal to or more than the value of the property," the Court may notice that Pulsar filed an amended disclosure statement. Dkt. 396. Exh. D thereto is an April 15, 2009 appraisal report where the appraiser states that it is his "opinion that the **Market Value** of the subject property, as of its day of inspection, **March 15, 2009**, was **'As Is' Cost Approach Only: $35,500,000 (THIRTY FIVE MILLION DOLLARS)** (sic)**; 'As Proposed' Cost Approach Only: $45,500,000 (FORTY FIVE MILLION FIVE HUNDRED**

**THOUSAND DOLLARS)**." (Emphasis in the original). Therefore, the Notice of Auction had to advise any prospective purchaser offering less than $26,625,000 (75% of $35,500,000 appraised market value) that he/she would **not** be a good faith purchaser. In re Snyder, 74 B.R. 872, 878 (Bkcy. E.D.Pa. 1987); In re Kendall Foods Corporation, 122 B.R. 792, 793 (Bkcy. S.D.Fla. 1990). **Only good faith purchasers are entitled to the protection of 11 U.S.C. 363(m)**. Thus, any prospective purchaser who offers less than $26,625,000 for the hotel, **not** being a good faith purchaser, will **not** be entitled to the protection of 11 U.S.C. 363(m).

In any event, Pulsar had to include **both** statements required by L.B.R. 6004-1(a)(2) in the Notice of Auction. Pulsar did **not** include **both** said statements in the Notice of Auction.

IV. <u>The Notice of Auction is Insufficient and Comports Neither with Commonwealth Law nor With Due Process of Law</u>.

As a matter of Commonwealth law and due process, **each** lien to be extinguished by the free-and-clear sale must be **specifically** addressed in the Notice of Auction: both by **particular lienholder** and by **specific lien**. In re Takeout Taxi Holdings, Inc., 307 B.R. 525 (Bkcy. E.D.Va. 2004); Compak Companies, LLC v. Johnson, 415 B.R. 334 (N.D.Ill. 2009). As to the requirement that the Notice of Public Auction list each particular lien (and, by necessity, each specific property (*finca*) encumbered thereby) **exactly as such liens appear in the Registry of Property**, reference is made to the Rules of Decision Act, 28 U.S.C. 1652, which provides:

> **§1652. State laws as rules of decision**
>
> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

Since the Bankruptcy Code does not "otherwise require or provide," the matter of accurately describing, as they appear in the Registry of Property, the particular liens and the specific properties they encumber is, again, a matter of local law pursuant to Butner v. United States, 440 U.S. 48, 55-56, 59 L.Ed. 2d 136 (1979):

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." (Case). The justifications for application of state law are not limited to ownership interests; **they apply with equal force to security interests**, including the interest of a mortgagee in rents earned by mortgaged property... What does follow is that **the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued. This is the majority view, which we adopt today.**

(Emphasized).

There is no doubt that, as a matter of Puerto Rico law, the deed of sale will **not** be recorded because the Notice of Auction fails to comply with 30 L.P.R.A. 2720, third paragraph:

> Said edict, **in addition to giving a description of the property** or real rights **which are subject to public auction, the minimum auction price**, and the rest of the complementary data on the auction, shall indicate the day, hour and location where the auction shall take place, **and also serve to announce the auction to creditors who have recorded or noted their rights on the mortgaged property** after the registration of the forecloser's credit, or that of the creditors of encumbrances or real rights who may have subordinated them to the claimant's mortgage, and to the owners, possessors, or holders of, or parties having an interest in titles conveyable by endorsement, **or to the bearer, which are secured by a mortgage** subsequent to the claimant's loan, and on which the personal notification of the initial brief and the demand for payment would have no effect, stating in the text of the edict the names of all these interested parties, if they are in the Registry certification, so that they may attend the auction, if they so desire, or before the auction is held, pay off the loan, its interest, assured court costs and lawyers' fees, and then subrogate their rights to those of the foreclosing creditor.

(Emphasized).

Likewise, the deed of sale will **not** be recorded free-and-clear of liens due to Pulsar's failure to notify the lienholders in accordance with procedural law; 30 L.P.R.A. 2473, third paragraph:

> In cases of mortgage foreclosures, those who have recorded or noted their rights after the mortgage and prior to the notation of a lawsuit, **must be notified of the auction in accordance with the procedural law in force in the defendant's case, without which the court cannot order the cancellation of these entries.**

(Emphasized).

To the same effect, Art. 188.1, third paragraph, of the Mortgage Regulations *(Reglamento Hipotecario para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad)* requires that the notice of public auction be published "according to the provisions of the Rules of Civil Procedure **and will contain the requirements set forth** in Article 220 of the [Mortgage] Law (30 L.P.R.A. 2720, supra) and Art. 140.1 of the [Mortgage] Regulations." (Our translation).

Art. 140.1 of the Mortgage Regulations, first paragraph, in turn provides that junior liens will be cancelled only "as long as the requirements of Art. 149 of the [Mortgage] Law (30 L.P.R.A 2473, supra) are met and the Court sets forth with particularity, by order, the entries (*asientos*) to be cancelled." (Our translation). The third paragraph of said Art. 140.1 is so pellucid that it must be quoted in Spanish:

> **En los casos en que los titulares de instrumentos negociables deben ser citados por edictos, en el mismo se hará particular identificación de la escritura en que la hipoteca inscrita fue otorgada, mencionando su fecha, número y notario que la autorizó.**

(Emphasized).

The Notice of Auction does not meet these requirements. The "particular identification" required by Art. 140.1 of the Mortgage Regulations **must be set forth in the Notice of Auction itself**: **EN EL MISMO** [*edicto*], not **interred in** some **un**published 67-page exhibit thereto. The particular "identification" of each deed of mortgage must include its date, number, and notary public who authorized it. **None of these particulars appears in the Notice of Auction.** And, for one of the only two mortgages mentioned in the Notice of Auction, the notary public is "identified" as "the undersigned notary."

Taking this sale just as a judicial sale but not necessarily a mortgage foreclosure sale, the result would be the same: the Registrar of Property will **not** record the deed of sale free and clear of liens, as provided by 30 L.P.R.A. 2267, 2271 and 2460:

**§2267. Judgment on documents.**

With respect to documents issued by Judicial Authority, said [Registrar's] judgment shall be limited to:

(1) **The jurisdiction and competence of the court**; the nature and effects of the decision handed down if it was rendered in the corresponding trial; **and if the procedures and precepts essential to its validity were observed**;

(2) the extrinsic reliability of the documents presented; and

(3) **the Registry data.**

Where administrative documents are concerned, the judgment shall refer, insofar as it is pertinent, to the particulars set forth in the preceding paragraph.

In all cases, **the Registrar may demand that complementary documents needed for a proper judgment be furnished**, whether they be notarial, judicial or administrative.

(Emphasized).

**§2271. Judgments on documents - Defects which impede registration.**

The following are defects which shall impede the registration of the title presented:

(1) Those causing the nonexistence of the act or contract to be recorded or the nullity or annullability thereof, or that of the documents presented.

(2) Those arising from Registry obstacles.

(3) Those based on the provisions of this subtitle.

(4) **Failure to present the necessary complementary documents or failure to verify compliance with the legal requirements.**

(Emphasized).

**§2460. Cancellation of entry not dependent on consent of interested parties; rules to follow.**

According to the provisions in the first paragraph of §2458 of this title, cancellations of entries which do not depend on the consent of interested parties shall be made, subject to the following rules:...

*Second* When a property or encumbered right is alienated by the court, entries subsequent to that of the claimant shall be cancelled at the request of the person who ends up being the owner of the property or right by presenting the mandamus ordering the cancellation. **The mandamus must include an**

**itemized statement of the legal proceedings** and a statement of the fact that the proceeds from the sale were not sufficient to cover the forecloser's loan or that the balance left over, if any, was deposited to provide for subsequent creditors...

See also C.R.U.V. v. Registrador, 117 D.P.R. 662 (1986); and Vendrell v. Torres Aguiló, 85 D.P.R. 873 (1962).

**The legal consequence of BURYING the description of the liens to be extinguished in a 67-page "exhibit" which was not published, is that the sale of the property will NOT be free and clear of said liens.** Ray v. Norseworthy, 90 U.S. 128, 23 L.Ed. 116 (1874); In re Parrish, 171 B.R. 138, 140 (Bkcy. M.D.Fla. 1994) ("...if the notice procedure mandated by the rules is bypassed, the sale does not extinguish that creditor's lien. The purchaser accedes to title, but does so *caveat emptor*."); In re Marcus Hook Development Park, Inc., 143 B.R. 648 (Bkcy. W.D.Pa. 1992); In re Metzger, 346 B.R. 806, 819 (Bkcy. N.D.Cal. 2006); Folger Adam Security, Inc. v. De Matteis/MacGregor, 209 F.3d 252, 265 (3rd Cir. 2000). Otherwise, the sale must be set aside as null and void. In re Rounds, 229 B.R. 758 (Bkcy. W.D.Ark. 1999); In re Koneta, 357 B.R. 540, 543-44 (Bkcy. D.Ariz. 2006).

Wherefore, Eurobank very respectfully prays that the motion to sell (dkt. 394) be **DENIED**.

Very respectfully submitted in San Juan, Puerto Rico, on March 2, 2010.

NOTIFICATION: It is hereby certified that on March 2, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to counsel of record.

McCONNELL VALDÉS
Counsel for Eurobank
270 Muñoz Rivera Ave., 9th Floor
Hato Rey, PR 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
http://www.mcvpr.com
Tel. (787) 250-5658/759-9292
Fax (787) 759-2799

By:s/ Rafael Pérez-Bachs
USDC-PR No. 116513
rp@mcvpr.com
